

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00012-CV
_____

IN THE INTEREST OF A.M., A CHILD

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2017-617-DR

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

After a bench trial in Gregg County, Texas, the trial court terminated Jamie's parental rights to her child, Ava.[1]   The trial court ordered rights terminated pursuant to Section 161.001(b)(1), subsections (E), (O), and (P), and found that termination of her rights was in the best interests of the child.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), (P), (b)(2) (West Supp. 2017).  The Texas Department of Family and Protective Services (the Department) was appointed the permanent managing conservator of the child.

On appeal, Jamie argues that (1) the trial court erred in denying her request to be present in court and participate in the trial and (2) there was factually insufficient evidence that termination was in the child's best interests.

We affirm the trial court's judgment because error regarding Jamie's right to be present was not preserved and sufficient evidence supports the trial court's finding that termination was in the best interests of the child.

## I.     Procedural and Factual Background

Jamie and Tim are the biological parents of Ava.  After Tim was confirmed as Ava's biological father, he executed a voluntary relinquishment of his parental rights to the Department.  Yet, even though his parental rights to Ava were also terminated, he continued to participate in this case.

---

[1] In order to protect the child's privacy, we will refer to the appellant mother as Jamie, the child as Ava, and Ava's father as Tim.  *See* TEX. R. APP. P. 9.8(b).

When Ava was born in April 2017, she tested positive for amphetamine, methamphetamine, and marihuana, and Jamie tested positive for amphetamine. Jamie admitted to having used methamphetamine for the preceding ten years, but she denied using drugs during her pregnancy, though she had been "around friends that were using." Jamie confirmed to the Department's investigator, Janika Cooper, that due to her prior use of methamphetamine, Jamie's other five children "had been adopted by paternal relatives" or placed with their respective fathers. Accordingly, when the Department was unable to locate appropriate family members for possible placement of Ava, the child was removed from Jamie's care and placed in foster care. The trial court ordered Jamie to complete the Department's provided service plan, which included drug testing, counseling, parenting classes, psychological evaluation, maintaining safe housing, abstaining from drugs and alcohol, maintaining contact with her caseworker, and refraining from criminal activity.

Alleging that reunification could not be achieved, the Department sought to terminate Jamie's and Tim's parental rights. The case was called for trial on February 26, 2018, and Jamie's counsel appeared, but she did not. Her counsel informed the court that Jamie was "incarcerated over in Harrison County" on allegations of drug possession, that he was not ready for trial, and that he requested a continuance. The trial court denied the motion and the trial proceeded without Jamie's presence.

Sedelia Nelson, an investigator with the Gregg County District Attorney's Office, testified that on February 3, 2018, Jamie was incarcerated in the Harrison County Jail in Marshall, Texas, on a charge of felony possession of a controlled substance. Even though Jamie attended most of

3

her visits with Ava, Department Caseworker Kemy Daniels testified that Jamie failed to appear for several drug tests, tested positive for methamphetamine in August 2017, did not successfully complete drug counseling, and failed to obtain and maintain housing or employment. Ava was eventually placed with one of Tim's relatives who wished to adopt the child. Both Daniels and the volunteer from Court Appointed Special Advocates (CASA), Debbie Lagrone, testified that Ava is safe, happy, and bonded in this new placement. Daniels also testified that she believed that Jamie's parental rights should be terminated and that termination was in the child's best interest. The State rested its case, and Jamie rested without calling any witnesses.

After considering all the evidence and the arguments of counsel, the trial court terminated Jamie's parental rights to Ava pursuant to Section 161.001(b)(1), subsections (E), (O), and (P), and found that termination was in the best interests of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), (P), (b)(2). The Department was appointed the permanent managing conservator of the child. Jamie's motion for new trial was denied.

## II.     Did the Trial Court Err in Denying Jamie's Request to be Present?

In her first point of error, Jamie contends that the trial court erred in denying her request to be present in court and participate in the trial.

When the parties made their initial announcements on the day of trial, the following colloquy occurred:

> [Jamie's Counsel]: Your Honor, Daryl Atkinson for the mother, [Jamie]. And, Your Honor, if I may at this point, my client is incarcerated over in Harrison County at this point. I don't feel that I'm ready to go today and will ask for a continuance. She is my defense witness in this matter, and we'd ask the court to consider a redate on this.

4

THE COURT: How long has this case been set, [Department's Counsel]; do you know?

[Department's Counsel]: Not off the top of my head, Judge. But generally speaking, I set these after the status hearing.

[Jamie's Counsel]: Judge, we were on a 14-day hearing in April of 2017. Our dismissal date is April 9th of this year. I don't believe we've been extended.

THE COURT: No. The Court specifically denied the request for an extension in this case. And do we know why your client is incarcerated in Harrison County?

[Jamie's Counsel]: There are allegations that she has possession of drugs, Your Honor.

THE COURT: Which, as this Court recalls, is the significant issue underlying the allegations in this case, as well, correct?

[Jamie's Counsel]: That is correct, sir.

THE COURT: The Court denies the request for a continuance, and it's duly noted in the record.

A point of error on appeal must comport with the objection made at trial. *In re M.M.W.*, 536 S.W.3d 611, 613 (Tex. App.—Texarkana 2017, no pet.). To preserve an error for appeal, the complaining party must timely and plainly make the court aware of the complaint and obtain a ruling. TEX. R. APP. P. 33.1(a); *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003).

Here, Jamie complains that the trial court erred in denying her "request to be present and participate in trial." However, Jamie only requested a continuance of the trial. She did not request a bench warrant, seek permission to participate telephonically, or request other relief to ensure that she could be present and participate in the trial. Because her complaints on appeal do not comport

5

with her request at trial, she has not preserved this issue. *M.M.W.*, 536 S.W.3d at 613. Accordingly, we overrule this point of error.

### III. Is the Evidence Factually Sufficient to Support Termination of Jamie's Parental Rights?

#### A. Standard of Review

The United States Supreme Court has acknowledged that the right of parents to maintain custody of and raise their child "is an interest far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). The Texas Supreme Court has held that, "[b]ecause the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014); *see also In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We, therefore, "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *A.B.*, 437 S.W.3d at 500.

Further, "involuntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20). An individual's parental rights to her child may only be terminated if the trial court finds, "by clear and convincing evidence, the existence of both of the following statutory requirements: (1) that the parent has engaged in one of the statutory grounds for termination and (2) that termination is in the child's best interest." *In re C.A.J.*, 459 S.W.3d 175, 178 (Tex. App.— Texarkana 2015, no pet.) (citing TEX. FAM. CODE ANN. § 161.001 (West 2014); *see In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002)). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a

firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In our factual sufficiency review, due consideration is given to evidence that the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the [] allegations." *Id.* at 108 (second alteration in original) (quoting *C.H.*, 89 S.W.3d at 25). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

Conversely, if the evidence is such that a reasonable fact-finder could have reasonably resolved any conflicts to form a firm conviction that grounds for termination exist, then the evidence is factually sufficient, and the termination findings must be upheld. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002); *C.A.J.*, 459 S.W.3d at 179. "[I]n making this determination, the reviewing court must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26). We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony. *H.R.M.*, 209 S.W.3d at 109. Further, "the rights of natural parents are not absolute; protection of the child is paramount. . . . The rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d

189, 195 (Tex. 1994) (citation omitted)). In other words, the child's emotional and physical interests will not be sacrificed merely to preserve parental rights. *C.H.*, 89 S.W.3d at 26.

### B.    Analysis

Jamie does not contest that grounds existed for termination, but only contends that there is factually insufficient evidence to support the trial court's finding that termination of her parental rights was in Ava's best interests. In considering whether termination is in the best interest of the child, "there is a strong presumption that the best interest of the child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 819 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2017). It is not necessary to prove all of these factors as a condition precedent to parental-rights termination. *C.H.*, 89 S.W.3d at 27; *N.L.D.*, 412 S.W.3d at 819. Evidence relating to a single factor may suffice in a particular situation to support a finding that termination is in the best

interests of the child. *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.) (citing *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *overruled on other grounds by J.F.C.*, 96 S.W.3d at 267 n.9).

When considering the child's best interest, we may take into account that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). We may consider evidence used to support the grounds for termination of parental rights in the best interest analysis. *C.H.*, 89 S.W.3d at 28. Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Further, the amount of contact between the parent and child and the parent's failure to provide financial and emotional support, continuing criminal history, and past performance as a parent are all relevant in determining the child's best interest. *See C.H.*, 89 S.W.3d at 28. We will only address those *Holley* factors for which there is relevant evidence. *See Holley*, 544 S.W.2d at 371–72.

Here, the evidence shows that Jamie has a long history of drug abuse that resulted in her five previous children being removed from her care. Because Ava was born with drugs in her system, there was strong evidence that Jamie was abusing drugs during her pregnancy. Jamie admitted to the Department that while pregnant, she had been around others using drugs. During the pendency of this case, Jamie tested positive for methamphetamine, failed to appear for other scheduled drug tests, and was arrested in a neighboring county for felony drug possession.

Furthermore, the Department's caseworker testified that throughout the proceedings, Jamie failed to complete drug counseling and failed to obtain and maintain safe, stable housing.

Based on this evidence, the trial court could have reasonably formed a firm belief or conviction that Jamie posed an emotional and physical danger to Ava (both now and in the future), that she lacked the requisite parenting skills to meet Ava's needs, that she would fail to provide a safe and stable home for the child, and that her acts and omissions indicated an improper parent-child relationship. *See M.R.*, 243 S.W.3d at 820–22 (parent's drug abuse, inability to provide stable home, failure to avoid drug use, failure to comply with service plan, inability to comply with court's orders, and forfeiture of their parental rights to other children support conclusion that termination is in best interests of children). Therefore, we find there is factually sufficient evidence to support the trial court's best-interest finding, and we overrule this point of error.

## IV. Conclusion

For all of the foregoing reasons, we affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     June 8, 2018
Date Decided:       June 22, 2018

10